Case No. 5 for argument today is Weber v. Saul. Mr. Schultz. May it please the Court, Your Honors. Barry Schultz on behalf of the appellant, Derrick Weber. In this case, the administrative law judge found that, among other things, that Mr. Weber was limited to sedentary work, but that he also had a severe left wrist impairment. And how frequently Mr. Weber can use his left hand for handling or fingering gross or fine manipulation is outcome determinative, because the vocational expert, in fact, both vocational experts in this case testified that if limited to occasional use of the left hand, in addition to the other limits which the ALJ did find, that Mr. Weber would be precluded from sustaining work activity. The ALJ found that Mr. Weber could frequently use the hand, meaning for two-thirds of the work day or some five and a half hours a day, but the ALJ did so with no explanation. At page 1344 of the record, she merely states that she considered his left hand, left wrist impairment in reducing Mr. Weber to sedentary work with frequent handling and fingering with the left hand, but no explanation as how the evidence supports that. Mr. Weber himself was specifically asked whether or not he could use his hands for even 20 minutes an hour for either fine manipulation or gross manipulation, and he testified that he could not because of the pain in his hand, stiffness in his hand, he drops things. So that means, according to his testimony, he could not even occasionally use the hand. Dr. Novak was a consulting orthopedic surgeon, provided a very detailed assessment at pages 936 to 939 with a conclusion at page 944 of the record. He found diffuse swelling in the left wrist area, focal tenderness, positive testing for De Quervain's tenosynovitis, decreased muscle strength, and he concluded at page 944 that the radial flap surgery from the forearm, where they took skin, veins, and arteries from Mr. Weber's forearm in order to reconstruct his right Achilles tendon, was likely the cause of his pain and stiffness and compression neuropathy, which would cause the numbness in his fingertips and his reduced grip strength. There's evidence that Mr. Weber was supposed to use his cane in his left hand because his problem with the lower legs, it's mostly on the right, but he couldn't use the left hand for the cane because of the problems that he had in that hand. In addition, he had to ask for a special strap for stretching that he had to do for therapy because he couldn't hold the regular strap with his left hand. Similarly, he requested a special brace because he couldn't pull up on a standard brace using his left hand. So all the evidence supports Mr. Weber's testimony that he's limited to a maximum occasional or less than occasional use of the hand, which would mean that based on the vocational expert testimony, a finding of disabled is required. This court held in the Briscoe X. Rel. Taylor v. Barnhart case, which we cite in our briefs, that the ALJ's failure to explain how she reaches a specific residual functional capacity finding by itself warrants remand. And in this case should be followed, Briscoe v. Taylor. And I ask that the court remand on that basis. In addition, Mr. Weber suffers from post-traumatic stress disorder from his combat duty and the horrendous things he observed and was part of, as well as being in a blast injury where he was severely injured. This court has held many times that limitations in concentration, persistence, or pace are generally not sufficiently addressed by merely limiting a claimant to simple work because a claimant may be able to learn a simple job but may not be able to stick to it because of problems with concentration, persistence, or pace. And that's the problem that we have here, is that the types of symptoms that Mr. Weber suffers from, hypervigilance and scanning of his environment, flashbacks, intrusive thoughts, which cause anxiety, sometimes mild, sometimes being very severe where he feels like a caged tiger. He paces. Sometimes he has to leave a situation. He isolates himself at times. There's no evidence at all in this record that those symptoms are triggered when Mr. Weber is engaged in complex or detailed activity, such that a limitation to simple work may be accommodated as symptoms. In fact, they were not accommodated properly by a limitation to simple work, but the ALJ needed to include other limits, such as his need to scan, his having flashbacks, which he testified occurred at least once a day for up to an hour, and those types of limitations should have been included. In addition, the ALJ specifically stated that she was giving deference to Mr. Weber's subjective complaints. That's at page 1349 of the record, page 29 of Tom's appendix, but that she was not finding that he needed to be off task more than 10% of the time. And specifically, the ALJ found that any off-task time for Mr. Weber would be accommodated by normal breaks. But again, given the types of limitations that Mr. Weber suffered from, types of symptoms that he suffers from, hypervigilance, flashbacks, intrusive thoughts, anxiety, there's no evidence that he could somehow wait until he had a break to deal with those types of symptoms. In fact, he testified they occurred out of the blue and they would occur at any time and not during normal break times, and there's no evidence supporting the ALJ's conclusion in that regard. And finally, the ALJ actually found that Mr. Weber is limited to brief and superficial interaction with supervisors. The vocational expert testified that during the training period for any of the three jobs in question, there was more intense interaction with the supervisor than brief and superficial. Therefore, according to the ALJ's own limitation, Mr. Weber could never be trained to learn the jobs that the ALJ found he could do, because the vocational expert testified that it required more interaction with supervisors than Mr. Weber was capable of. And on these bases, Your Honor, plaintiff requests that this court reverse the administrative law judge's decision. Thank you. Thank you, Mr. Schultz. Ms. Siegel. Good morning, Your Honors. My name is Catherine Siegel. I represent the Commissioner of Social Security in this case. I'd like to make three main points during my argument. First of all, that substantial evidence supports the ALJ's decision and that the court may affirm on that basis. And to the extent that the claimant believes that his limits are more limits are warranted than the ALJ assessed, he bears the burden of proving those limits. And finally, the only disability opinion that the claimant provided in support of his claim was related to Dr. Benton's report. Dr. Benton provided a medical opinion that the claimant was disabled, but on the basis of a very different standard under the Department of Veterans Affairs, which has a very different standard for determining disability than the Social Security Administration. With regard to substantial evidence, I'll focus on the things that the claimant's attorneys raised today in the brief. Regarding the hand limits, the ALJ did account for the claimant's left wrist impairment. The ALJ limited the claimant to a sedentary work capacity, which requires no more than 10 pounds of lifting, which is a very minimal amount. It's the most restrictive functional capacity of any of the capacities that the regulation set forth. The ALJ also limited the claimant to frequent handling and fingering with his left hand, and he based this on the medical records and noted that there were no medical sources that limited the claimant's left hand functioning. There were no medical opinions regarding hand limits that the claimant submitted, and the claimant was represented by an attorney at the administrative level at three different hearings and did not submit a Social Security assessment form filled out by any of his medical providers. That goes to the burden of proving his disability, proving his hand limits. He also, contrary to a claimant's counsel's statement, he did not testify to any specific limits on handling and fingering. He did not say that he had occasional handling and fingering limits. That is something that was raised by the attorney in his questions but was not established in the testimony of the claimant. When you look to the examinations from Dr. Novak, he is an orthopedic specialist who examined the claimant in October 2007. The claimant was complaining of left wrist condition problems, including some weakness, but on examination, Dr. Novak found that the claimant's left hand was only mildly reduced in strength on examination. The claimant complained about lifting heavy objects during that evaluation, and the ALJ acknowledged that in her decision when she limited the claimant to sedentary work. She did not limit him to a functional capacity that required heavy lifting. On the contrary, she limited him to the most restrictive functional capacity. Dr. Novak also found in the evaluation that weakness was not a significant factor for this claimant, and although the de Quervain syndrome was diagnosed, there has been no follow-up treatment for that condition. Similarly, other evidence that supported the ALJ's hand functioning conclusions, there was an electromyogram of the hand nerves on both hands, and the electromyogram showed no lesions and no carpal tunnel syndrome. And likewise, shortly after that electromyogram, there was a June 2008 exam that showed the claimant had normal strength in both of his hands, except for a slight decrease on the left, which also would be consistent with Dr. Novak. In fact, the only treatment that the claimant has received for his left wrist occurred when he hit his hand on a shopping cart in November of 2011, and following that incident, he had an x-ray, and that showed no fractures, and by December of 2011, he reported that he was much better, and that he could actually play video games with his son, one of the activities that the ALJ considered. Other activities that the ALJ considered when looking at hand limits, he looked at his ability to take care of his personal needs, to be able to shop, he also worked on a farm, his family has a farm, he did some farm work, he was able to do laundry, and in 2014, he was able to change a flat tire. So the ALJ's limits to frequent handling appear to be reasonable based on the evidence that she cited, and also given that it was a fairly generous limit, because none of the claimant's treating or examining doctors limited his ability to do hand-thumb functioning. Now with regard to the post-traumatic stress syndrome and limits that were related to that, the ALJ accounted for the claimant's mental impairments with simple instructions and decisions and limited interaction with others and no tandem tasks. Those limits were taking into consideration that the claimant alleged that he had poor memory and focus and distractibility, and that the ALJ contrasted his allegations that he had in the report to Dr. Benton, wherein he described many of the symptoms that the claimant's attorney was speaking about today. The ALJ contrasted that with the reports that the claimant made to the agency in a function report in April of 2013. That report is one of the first contacts the claimant had with the agency with regard to a Social Security claim. It's an important report because it's the most contemporaneous statements about his abilities. So when the claimant's attorney talks about there not being any evidence that he could do things that were related to simple instructions and simple work, it's simply not the case that the report to the agency asked the claimant how long he could pay attention. And this is his just extemporaneous report, his contemporaneous report in 2013. It's shortly after his insurance status expired. He said he could pay attention for hours, hours. And that's at page 134 of the record. When he's asked, do you finish what you start, the claimant marked the box yes. And when he was asked whether he could follow written or spoken instructions, he said his ability was good in both written and spoken instructions. So those are all things that the claimant talked about in that report to the agency regarding his abilities. This is despite his post-traumatic stress disorder history. Importantly, the ALJ also considered that the claimant declined to follow through with treatment. And specifically, he told his doctors that he didn't need any more. He didn't need to follow through with treatment because his symptoms had improved. That is something that ALJ could rely on. And it was important also for his case workers, his treatment providers, to monitor his post-traumatic stress disorder. And so they did periodically do these screenings, post-traumatic stress disorder screenings. And in those, he responded that he did not have flashbacks within the last month. He did not have nightmares within the last month. They asked very specific questions about how his continuing symptoms, whether he was having symptoms of post-traumatic stress disorder. And in those screenings, he told his caregivers that he did not. So those are all important things that the ALJ considered. I see I'm running out of time. Does the court have any questions specifically that I have not responded to? Then I will ask the court to affirm the commissioner's decision and find that he was not disabled. Thank you, counsel. Anything further, Mr. Schultz? Mr. Schultz, you're on mute. I apologize. Mr. Weber did testify at page 1736 of the administrative record very specifically that he was limited to less than 20 minutes of both grasping and fingering or fine manipulation. And he testified he would lose dexterity, his hand would swell up. So that is in the record. Also, in general, the lack of an opinion is not a specific basis for ALJ making a specific functional finding. The claimant has the impairment, which the ALJ found in the left wrist. The claimant testified to what his limitations are. And there's evidence in the record that he does, in fact, have swelling and weakness in the hand. There's actually no evidence according to ALJ's finding. And that's the legal problem with this case. The fact that at one time in a 13-year record he changed a flat tire doesn't show what Mr. Weber could do on a sustained basis. The fact that he played video games, that's all we have is a statement that he played video games with his son. We don't know how long he played them for. We don't know if he used his left hand. We don't know if he did it once a week. So, again, that's not support for finding that he could use his hands for 40 minutes every hour, eight hours a day, five days a week at work. In addition, it's important to remember that Dr. Benton is the only mental health practitioner specialist, and a specialist in PTSD, who gave an opinion concerning the impact and implications of Mr. Weber's PTSD. The only opinion. State agency doctors found insufficient evidence of any impairment. The ALJ rejected those opinions. So the ALJ made her own assessment, contrary to the one specialist of record, and, again, plaintiff requests that this court reverse and remand the decision of the Administrative Lot Judge. Thank you, Your Honors. Thank you, Counsel. The case is taken under advisement.